IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

R.R.,

     Petitioner,

vs.                                           Civ. No. 20-564 KG/GBW

DORA OROZCO, in her official capacity as
Warden of the Otero County Processing Center, et al.,

     Respondents.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner's Motion for Entry of a Temporary Restraining Order on his Petition for Writ of Habeas Corpus ("Motion"), (Doc. 4), filed June 10, 2020.  Petitioner asks the Court to: (1) Order Petitioner's immediate removal from Immigration and Customs Enforcement's ("ICE") adult detention center and to place him with the Office of Refugee Resettlement ("ORR"); and (2) Enjoin ICE from applying an unlawful age determination which prevents Petitioner from securing rights as an unaccompanied alien child ("UAC").  Since Respondents received notice of Petitioner's Motion and filed a response opposing it, the Court will treat Petitioner's Motion as a request for a preliminary injunction.  *See* Fed. R. Civ. P. 65; 13 *Moore's Federal Practice* § 65.31 (2020) ("[W]hen a temporary restraining order is sought on notice to the adverse party, it may be treated by the court as a motion for a preliminary injunction.").

This case was initially assigned to the Honorable Martha Vazquez.  On June 10, 2020, Judge Vazquez ordered expedited briefing on the Motion.  (Doc. 5).  Pursuant to that order, on June 17, 2020, Respondents filed a Motion to Dismiss and Response in Opposition to Petitioner's Motion, (Doc. 10), and on June 22, 2020, Petitioner filed a Reply to the Motion,

(Doc. 14).  Also on June 22, 2020, this case was reassigned to the undersigned, and the Court

granted Petitioner's Motion in part by ordering Petitioner immediately removed from ICE's adult

detention center and placed into the custody of ORR to provide appropriate detention and

education.  (Doc. 16).[1]  The Court further ordered that Petitioner shall be treated as a juvenile for

purposes of detention and immigration proceedings until the Court decides whether Petitioner's

age determination will be reviewed and enjoined.  *Id.*

      Having considered the parties' briefs, evidence submitted by the parties, the record of the

case, and relevant law, the Court appoints Petitioner's attorneys as his "next friends" for

purposes of representation in this matter under Federal Rule of Civil Procedure 17(c)(2), and

grants the Motion in part as set forth below.

I.    *Background*

      Petitioner states he fled his native country, India, out of fear for his life and made his way

to the United States after traveling through Azerbaijan, Armenia, Suriname, Guyana, Brazil,

Peru, Ecuador, Colombia, Panama, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico.

(Doc. 1) at 7.  Petitioner entered the United States on April 6, 2020, at a place not designated as a

port of entry and was apprehended by U.S. Border Patrol.  (Doc. 1) at 4; (Doc. 10) at 3.

Petitioner had no documents that would allow him to lawfully enter the United States and no

identification documents, and he claimed his passport and phone were "stolen by the mafia in the

Panamanian jungle."  (Doc. 10) at 3.  When he was apprehended, Petitioner claimed his date of

birth was July 3, 2002.  (Doc. 4) at 4; (Doc. 10-1) at 2, ¶ 9 (Declaration of Acting Assistant Field

---

[1] This case was reassigned to the undersigned in the interest of judicial efficiency because it has similar facts and legal issues as the case *V.V. v. Orozco, et al.*, CV-20-560 KG/CG, which was filed June 9, 2020.  *See* Fed. R. Civ. P. 42(a)(3) ("If actions before the court involve a common question of law of fact, the court may: … issue any other orders to avoid unnecessary cost or delay.").

Office Director Danielle M. Hernandez) ("On April 6, 2020, [Petitioner] initially claimed his

date of birth was July 3, 2002, when apprehended by U.S. Border Patrol, however, the agents

processed [Petitioner] as an adult based on the information he provided during processing.").

On April 7, 2020, Petitioner was transferred to the custody of ICE pending removal

proceedings.  (Doc. 10-1) at 2, ¶ 5.  Due to Petitioner's claim that he was a minor, ICE obtained

information from the U.S. Visit and Immigrant Status Indicator Technology ("US VISIT"),

which is a system that collects and analyzes biometric data such as fingerprints.  *Id.* at 2, ¶ 7.

The US VISIT data showed that on December 19, 2019, January 3, 2020, and January 18, 2020,

Petitioner was documented as having a date of birth of April 25, 2000, and on January 21, 2020,

Petitioner was documented as having a date of birth of April 25, 2001.  *Id.* at 2, ¶ 8.  Based on

this information, ICE documented Petitioner's date of birth as April 25, 2000, on the Department

of Homeland Security Form I-213.  (Doc. 10) at 3-4; (Doc. 1-7).

On April 15, 2020, ICE requested a dental or skeletal age exam to assist in verifying

Petitioner's age.  (Doc. 10-1) at 2, ¶ 10.  Because local dental offices were closed due to the

COVID-19 pandemic, a bone density exam was completed by Southwest XRay on April 21,

2020.  *Id.*  The examination results are signed by Amy Maxwell, MD, DABR, and state in their

entirety:

> The stated chronological age of this male patient is 4 days less than
> 20 years.  As per the standards of Greulich and Pyle, the skeletal
> age is at least 19 years (the oldest available standard in the
> reference manual).  The growth plates are nearly all fused, with the
> exception of the distal radial epiphysis, where there is minimal
> residual visibility of the epiphyseal line.  Of note, this can persist
> throughout much of the adult life.

(Doc. 1-5).  One of Petitioner's family members provided ICE with a picture of a Government

ID card from India ("Aadhar card") and a page out of a passport which indicate Petitioner's date

of birth is July 3, 2002.  (Doc. 10-1) at 2, ¶ 11; (Doc. 1-3).  ICE contacted an officer with the

Consulate of India in Houston, who stated: "If the person in question is the same as per the photo

in the attached copy of the passport, then the above details are right."  (Doc. 10-1) at 3, ¶ 12.

After considering "the totality of the evidence," ICE determined Petitioner was an adult.  *Id.* at 3,

¶ 15.

On May 13, 2020, an Immigration Judge held a hearing at which Petitioner appeared via

videoconference and a translator and counsel for both parties appeared via telephone.  (Doc. 1) at

7.[2]  At the hearing, Petitioner submitted a copy of his birth certificate, the Aadhaar card, and an

Income Tax ID, and he testified as to his age and travel to the United States.  *Id.*; (Doc. 1-3).

Petitioner stated he provided a false date of birth when he arrived in Panama because he thought

he would be kept in Panama or returned to India if he admitted he was a minor.  Petitioner

further testified that he did not know when he received the birth certificate.  The Immigration

Judge found Petitioner not credible because he used an earlier date of birth on three other

occasions.  He further found the birth certificate may be fraudulent because it does not include

Petitioner's name in English or his parents' Aadhaar card numbers.  Relying on the bone density

exam and the date of birth Petitioner had given on three other occasions, the Immigration Judge

found Petitioner was an adult and assigned him the date of birth on the Form I-213 (April 25,

2000).  On June 9, 2019, the Immigration Judge denied Petitioner's application for asylum and

ordered him removed to India.  (Doc. 10-3).

In his Section 2241 Habeas Corpus Petition, Petitioner argues ICE and the Immigration

Judge improperly determined he was an adult by relying on the skeletal age scan, the Form I-

---

[2] The Court has listened to the audio recording of the May 13, 2020, hearing before the
Immigration Judge, which was submitted to the Court by Respondents.  *See* (Doc. 10-2)
(enclosing audio recording of hearing before Immigration Judge).

213, and the date of birth he gave in Panama.  (Doc. 1).  Petitioner states that as a result of his

age determination he is ineligible to pursue Special Immigrant Juvenile Status (a path to

permanent residency) and is ineligible for placement in the "least restrictive setting" under 8

U.S.C. § 1232(c)(2).  *Id.* at 13-14.  He also argues the Immigration Judge's credibility finding "is

a near death knell" for any asylum claim.  *Id.* at 14.  Petitioner's Section 2241 Petition raises the

following claims:

1. Unlawful placement in ICE custody based on an improper age determination, in violation of 8 U.S.C. §§ 1232(b)(4) and 1232(c)(2)(A);

2. Unlawful detention at the Otero County Processing Center because it does not provide separate accommodations for juveniles, in violation of 8 C.F.R. § 1236.3(d);

3. Violation of his substantive due process rights under the Fifth Amendment; and

4. Violation of his procedural due process rights under the Fifth Amendment

(Doc. 1) at 21-23.  In his Motion for a Preliminary Injunction, Petitioner asks the Court to:

1. Order Petitioner's immediate removal from ICE's adult detention center and to place him with ORR to provide appropriate detention and education; and

2. Enjoin ICE from applying the unlawful age determination which prevents Petitioner from eligibility for:
   a. Special Immigrant Juvenile Status under 8 U.S.C. § 1101(a)(25)(J);
   b. Initial jurisdiction of his asylum claim with U.S. Citizenship and Immigration Services under 8 U.S.C. § 1158(b)(3)(C);
   c. Physical placement with the Department of Health and Human Services pursuant to 8 U.S.C.§ 1232(b)(1);
   d. The right to reunify with qualifying sponsors in the United States and be held in the least restrictive setting pursuant to 8 U.S.C. § 1232(c)(2); and
   e. If no sponsor is available to receive Petitioner, placement in the least restrictive setting available on Petitioner's eighteenth birthday including release on his own recognizance. 8 U.S.C. § 1232(c)(2).

(Doc. 4) at 22.

On June 22, 2020, the Court found: (1) Petitioner is likely to prevail on the merits based

on evidence presented regarding unreliability of skeletal age evidence and copies of Petitioner's

birth certificate, Government of India Aadhaar card, and income tax department ID; (2)

Petitioner would suffer irreparable harm from being held in an adult detention center as a minor

and being prevented from seeking asylum as a minor if his age determination is found to be

unlawful; and (3) the public interest and balance of equities weigh in favor of enjoining

Respondents from detaining Petitioner with unrelated adults until Petitioner's challenge to his

age determination is resolved.  (Doc. 16).  The Court granted Petitioner's Motion in part and

ordered Petitioner removed from ICE's adult detention center and placed into the custody of

ORR.  The Court further ordered that Petitioner shall be treated as a juvenile for purposes of

detention and immigration proceedings until the Court decides whether Petitioner's age

determination will be reviewed and enjoined.  *Id.*

II.     *Statutory and Regulatory Framework*

        Most immigration enforcement functions are carried out by the Department of Homeland

Security ("DHS") and its sub-agency, ICE.  *See* 6 U.S.C. §§ 111, 251, 291.  Congress established

a different legal framework, however, for the care and custody of UACs, who are defined as

children under age eighteen who have no lawful immigration status in the United States and no

parent or legal guardian in the United States available to provide care and physical custody.  *See*

6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(b) (the William Wilberforce Trafficking Victims

Protection Reauthorization Act, "TVPRA").  The TVPRA provides that, other than in

exceptional circumstances, unaccompanied minors apprehended by immigration officials are

transferred to the custody of the Department of Health and Human Services ("HHS").  8 U.S.C. §

1232(b)(3); *see also* 8 U.S.C. § 1232(b)(1) ("[T]he care and custody of all unaccompanied alien

children, including responsibility for their detention, where appropriate, shall be the

responsibility of the Secretary of Health and Human Services.").  Moreover, "[e]ach department

or agency of the Federal Government shall notify the Department of Health and Human Services within 48 hours upon … the apprehension or discovery of an unaccompanied alien child, or … any claim or suspicion that an alien in the custody of such department or agency is under 18 years of age."  8 U.S.C. § 1232(2)(A)-(B).

The ORR, a division of HHS, is thereafter responsible for "coordinating and implementing the care and placement" of UACs.  6 U.S.C. § 279(a)-(b)(1)(A).  Congress has established that these children "shall be promptly placed in the least restrictive setting that is in the best interest of the child" and that "[i]n making such placements, the Secretary [of HHS] may consider danger to self, danger to the community, and risk of flight."  8 U.S.C. § 1232(c)(2)(A).  While HHS only has authority over the care and custody of immigrant children, Congress extended certain protections to newly adult immigrants who were formerly in the care and custody of HHS.  For instance, when a UAC in the custody of HHS reaches eighteen years of age and is transferred to the custody of the DHS, DHS "shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight.  Such aliens shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home."  8 U.S.C. § 1232(c)(2)(B).

To determine whether an individual is covered by the protections of the TVPRA, Congress required HHS and DHS to "develop procedures to make a prompt determination of the age," and "[a]t a minimum, these procedures shall take into account multiple forms of evidence, including the non-exclusive use of radiographs, to determine the age of the unaccompanied alien."  8 U.S.C. 1232(b)(4).  In accordance with this requirement, ORR and ICE developed age

determination policies and procedures.  *See* (Doc. 1-8) (ORR's Policy Guidelines for

"Determining the Age of an Individual Without Lawful Immigration Status") (found at

https://www.acf.hhs.gov/ orr/resource/children-entering-the-united-statesunaccompanied-

section-1, last visited June 29, 2020); (Doc. 4) at 6, n.3 (ICE's Policy Guidelines titled "Field

Office Juvenile Coordinator Handbook Enforcement and Removal Operations" 22 (2017))

(found at https://www.documentcloud.org/documents/4446357-Juvenileand-Family-Residential-

Management-Unit.html, last visited June 29, 2020).  Each of these policy guidelines require the

agencies to evaluate each case carefully "based on the totality of all available evidence, including

the statement of the individual in question."  (ORR Policy Guidelines, § 1.6); (ICE Policy

Guidelines, § 3.1.2).  Regarding the use of imaging technology, the agencies' policies require:

(1) a medical professional experienced in age assessment methods to perform the examination;

(2) the individual's ethnic and genetic background be taken into account; (3) dental and skeletal

maturity assessments may only be used in conjunction with other evidence; and (4) the

"examining doctor must submit a written report indicating the probability percentage that the

individual is a minor or an adult."  (ORR Policy Guidelines, § 1.6); (ICE Policy Guidelines, §

3.1.2) (stating dental and skeletal bone maturity assessments should only be used "[a]s a last

resort").  In addition, the guidelines state: "If an individual's estimated probability of being 18 or

older is 75 percent or greater according to a medical age assessment, and this evidence has been

considered in conjunction with the totality of the evidence, ORR may refer the individual to

DHS."  (ORR Policy Guidelines, § 1.6); (ICE Policy Guidelines, § 3.1.2) ( "If the probability of

an individual being 18 years old or older is 75 percent or greater, and the totality of the evidence

suggests the person is an adult, process the individual as an adult.").

III.     *Court's Authority to Consider Petitioner's Motion*

Petitioner asserts the Court has jurisdiction under Article I, section 9, clause 2, of the United States Constitution (Suspension Clause), 28 U.S.C. § 2241, and 28 U.S.C. § 1331, because Petitioner "is presently in custody under color of authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States."  (Doc. 1) at 3-4. Respondents, however, contend the Court does not have jurisdiction to consider Petitioner's claims, Petitioner has not exhausted his administrative remedies, and Petitioner challenges his conditions of confinement, not the fact or legality of his confinement, which is not a cognizable habeas corpus claim.  (Doc. 10) at 2-3.  Respondents further argue that even if the Court were to find Petitioner's birth date is July 3, 2002, he will soon turn eighteen, so his claims will soon be moot.  *Id.* at 2.[3]

A.  *Jurisdiction*

Respondents first argue the following statutes preclude the Court from reviewing Petitioner's age determination: 8 U.S.C. § 1226(e), 8 U.S.C. § 1158(b)(3)(C); 8 U.S.C. § 1252(a)(5), and 8 U.S.C. § 1252(b)(9).  (Doc. 10) at 11-13.  A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where a petitioner is "in custody under or by color of the authority of the United States … in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. §§ 2241(c)(1), (3).  "The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention."  *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012); *see also Dept. of Homeland Sec. v.*

---

[3] Neither party alleges that this Court is the improper venue for this case, and the Court concludes that venue is proper because Petitioner is being held in New Mexico.  *See, e.g., Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

*Thuraissigiam*, 2020 WL 3454809, --- S. Ct. ---- (2020) ("Habeas … is the appropriate remedy to ascertain whether any person is rightfully in confinement or not.") (citation and internal quotation marks omitted).  However, habeas corpus review is not available for claims "challenging a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding an alien's detention or release."  *Demore v. Kim*, 538 U.S. 510, 516 (2003) (citations omitted) (discussing 8 U.S.C. § 1226(e)).  In addition, habeas corpus review is not available for claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," 8 U.S.C. § 1252(g), or "arising from any action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9).  Indeed, pursuant to 8 U.S.C. § 1252(a)(5), courts of appeals "shall be the sole and exclusive means for judicial review of an order of removal."

Accordingly, the Court agrees with Respondents that the Court does not have jurisdiction to review any discretionary judgments by ICE or the Immigration Judge, including Petitioner's order of removal.  *See, e.g., Pelletier v. United States*, 653 Fed. Appx. 618, 622 (10th Cir. 2016) (finding no federal court jurisdiction over modification of or release from conditions of asylum-seeker's bond); *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006) ("[C]hallenges directed solely at the agency's discretionary and factual determinations remain outside the scope of judicial review" under 8 U.S.C. § 1252(a)(2)(B)(ii)).

Nevertheless, Petitioner does not merely challenge his removal order or ask for modification of his conditions of confinement.  Instead, Petitioner argues the agency failed to comply with 8 U.S.C. § 1232 in deeming him an adult.  Importantly, "the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision,'" and "challenges to the statutory framework" authorizing detention are cognizable

habeas claims. *Jennings v. Rodriguez*, --- U.S. ----, 138 S. Ct. 830, 841 (2018); *see also*

*Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("§ 2241 habeas corpus proceedings remain

available as a forum for statutory and constitutional challenges to post-removal-period

detention."); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the

discretionary process itself was constitutionally flawed[,] are cognizable in federal court on

habeas because they fit comfortably within the scope of § 2241.") (citation omitted).

 As explained above, the TVPRA requires agencies to develop and comply with age

determination procedures and transfer to HHS custody any juvenile found to be a minor. *See* 8

U.S.C. § 1232(b)(3)-(4). Therefore, Petitioner's claim that ICE and the Immigration Judge did

not follow these statutory requirements in finding he was an adult is a "challenge to the statutory

framework," not to discretionary agency decisions. Indeed, many federal courts have considered

claims regarding whether federal agencies have properly applied Section 1232's safeguards for

UACs. *See, e.g., Ramirez v. U.S. Immigration and Customs Enforcement*, 310 F.Supp.3d 7, 17-

19 (D.D.C. 2018) (granting preliminary injunction where UACs alleged defendants did not

consider least restrictive placements in violation of 8 U.S.C. § 1232(c)(2)(B)); *C.T.M. v. Moor*,

2020 WL 1249757 (N.D. Tex) (considering petitioner's Section 2241 habeas claim challenging

agency's compliance with 8 U.S.C. § 1232(b)(4) and ORR's Policy Guide § 1.6 in age

determination); *N.B. v. Barr*, 2019 WL 4849175 (S.D. Cal.) (same); *B.I.C. v. Asher*, 2016 WL

8672760 (W.D. Wash.) (same); *I.J. v. Keeton*, No. CV-19-01904-SMB (D. Ariz. 2019) (same);

*L.B. v. Keeton*, CV-18-03435-JJT (D. Ariz. 2018) (same).

 In contrast, in a case in this district, the court found it did not have jurisdiction to review

ICE's factual determinations in its discretionary placement decision under 8 U.S.C. §

1232(c)(2)(B), where the evidence established that ICE considered the least restrictive setting in

compliance with 8 U.S.C. § 1232(c)(2)(B).  *Godinez v. United States*, 2020 WL 3402059, *4-5

(D.N.M.).  In reaching this decision, the court found the petitioner was "attempting to get around

the jurisdictional bar" because although he alleged the respondents "failed whatsoever to

consider placement in the least restrictive setting," he was in fact challenging the respondents'

"discretionary decision made after considering the statutory factors and the evidence."  *Id.* at *5.

Since Petitioner here has provided evidence that Respondents have not complied with Section

1232(b)(4) and agency policies regarding the use of radiographs, the Court finds the holding in

*Godinez* is distinguishable.

On June 25, 2020, the United States Supreme Court issued a decision finding that the

provision of 8 U.S.C. § 1252(e) which limits habeas review of expedited asylum determinations

under 8 U.S.C. § 1225(b) does not violate the Suspension Clause.  *Thuraissigiam*, 2020 WL

3454809, *3, 7 (explaining the Suspension Clause provides the writ of habeas corpus shall not be

suspended except in cases of rebellion or invasion, and further holding that asylum-seekers lack

constitutional procedural due process rights for judicial review of negative credible-fear

determinations).[4]  In reaching this decision, the Supreme Court reasoned that "Congress is

entitled to set the conditions for an alien's lawful entry into this country" and, therefore,

individuals who enter the country illegally have "no entitlement to procedural rights other than

those afforded by statute."  *Id.* at 3.  The Supreme Court emphasized that habeas review is

appropriate for challenges to an individual's confinement, whereas the asylum-seeker in that case

"did not ask to be released" but sought "vacatur of his removal order and an order directing

[DHS] to provide him with a new opportunity to apply for asylum and other relief from

---

[4] On June 29, 2020, Respondents filed a Notice of Supplemental Authority regarding this
decision.  (Doc. 20).

removal."  *Id.* at *8, 10 (citation and internal quotation marks omitted) (stating the "legality of

the Respondent's detention is not in question").  The Court further explained:

> The relief that a habeas court may order and the collateral
> consequences of that relief are two entirely different things.
> Ordering an individual's release from custody may have the side
> effect of enabling that person to pursue all sorts of opportunities
> that the law allows.  For example, release may enable a qualified
> surgeon to operate on a patient; a licensed architect may have the
> opportunity to design a bridge; and a qualified pilot may be able to
> fly a passenger jet. But a writ of habeas could not be used to
> compel an applicant to be afforded those opportunities or as a
> means to obtain a license as a surgeon, architect, or pilot.

*Id.* at *11.

In this case, some of the relief requested in Petitioner's Section 2241 Petition is precluded

by 8 U.S.C. § 1252(e) and *Thuraissigiam*.  Specifically, Petitioner's request that the Court

declare that Petitioner is a UAC is not a challenge to the legality of his detention and, instead,

seeks review of an executive agency decision and to compel that Petitioner be afforded specific

opportunities.  *See* (Doc. 1) at 24-25.  However, for purposes of Petitioner's Motion for a

Preliminary Injunction, the issue before the Court is whether DHS shall be enjoined from

applying an age determination that Petitioner alleges violates 8 U.S.C. § 1232(b)(4) and the

agencies' policies regarding the use of radiography evidence.  *See* (Doc. 4) at 22.  Accordingly,

in contrast to the asylum-seeker in *Thuraissigiam*, at this stage of the case Petitioner challenges

the legality of his detention and seeks protection of procedural rights afforded him by statute.

Therefore, the Court concludes the Supreme Court's recent decision does not foreclose judicial

review of Petitioner's claim that ICE and the Immigration Judge failed to comply with TVPRA

in determining his age.

13

### B. *Exhaustion*

Next, Respondents argue Petitioner has not exhausted his administrative remedies because he did not request a bond hearing before an immigration judge and his appeal of his removal order is still pending.  (Doc. 10) at 13-14.  While "exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief," the Tenth Circuit allows an exception "if a petitioner can demonstrate that exhaustion is futile."  *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010).

First, Petitioner is not challenging his removal order and, even if he were, the Court does not have jurisdiction to review a removal order under 8 U.S.C. § 1252(a)(5).  Accordingly, the fact that the appeal of his removal order is pending does not preclude review of Petitioner's claim regarding his age determination.  In addition, the Court agrees with Petitioner that exhaustion of administrative remedies would be futile because he claims he will turn eighteen on July 3, 2020, which is before he will be able to exhaust his appeal.  *See Ramirez*, 310 F.Supp.3d at 24 ("While it is true that an alien who is denied release by ICE may seek de novo review of that denial from an immigration judge, *see* 8 C.F.R. § 1003.19; 8 C.F.R. § 1236.1(d)(1), Defendants' reliance on this potential redetermination ignores the fact that it occurs weeks or months after ICE's initial denial of relief.").  Therefore, the Court concludes Petitioner has sufficiently demonstrated that exhaustion of administrative remedies would be futile.

### C. *Cognizable Habeas Claim*

Respondents also contend Petitioner has not submitted a cognizable habeas claim under 28 U.S.C. § 2241 because, by asking for a transfer to a different agency, he is challenging the conditions of his confinement.  (Doc. 10) at 14-15.  The Tenth Circuit has held that "a prisoner who challenges the fact or duration of his confinement and seeks immediate release or a

14

shortened period of confinement, must do so through an application for habeas corpus.  In

contrast, a prisoner who challenges the conditions of his confinement must do so through a civil

rights action." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (citations

omitted); *see also Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011) ("It is well-settled

law that prisoners who wish to challenge only the conditions of their confinement, as opposed to

its fact or duration, must do so through civil rights lawsuits filed pursuant to 42 U.S.C. § 1983 or

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)—not through federal habeas

proceedings.").  Accordingly, "a habeas action is available to challenge the *underlying legal*

*basis* for detention or the length of detention, but not conditions of confinement."  *Godinez*, 2020

WL 3402059, *2.

As explained, Congress has established a legal framework whereby HHS and ORR are

responsible for the care and custody of UACs—not DHS and ICE.  *See* 6 U.S.C. § 279(g)(2); 8

U.S.C. § 1232(b) ("[T]he care and custody of all [UACs], including responsibility for their

detention, … shall be the responsibility of [HHS].").  Respondents argue "the core of

[Petitioner's] claim" is that "the conditions of his confinement are inappropriate based on his

alleged age."  (Doc. 10) at 14-15.  However, Petitioner's claim that DHS failed to comply with

the TVPRA and agency policies is a challenge to the underlying legal basis of his detention with

DHS.  Moreover, TVPRA and agency policies provide that UACs are afforded specific

protections, including release to a family member or sponsor.  Therefore, Petitioner's claim is

more than a challenge to the conditions of his confinement and is cognizable under Section 2241.

*Cf. Palma-Salazar,* 677 F.3d 1031, 1035-36 (finding petitioner's challenge to being held in a

maximum security prison sought a change to the place of his confinement so it must be brought

pursuant to *Bivens* or Section 1983, and not Section 2241); *Godinez*, 2020 WL 3402059, *3

("[A] request for release because of COVID-19 is essentially a challenge to conditions of confinement and therefore habeas relief is not available under § 2241.") (citations omitted).

   *D. Mootness*

   Finally, Respondents contend Petitioner's claims will soon be moot, regardless of the agency's age determination, because he will turn eighteen by his own admission on July 3, 2002. (Doc. 10) at 2.  Article III of the Constitution permits federal courts to adjudicate only "actual, ongoing controversies."  *Honig v. Doe*, 484 U.S. 305, 317 (1988).  "A case is moot when a party has already obtained all the relief that it has sought."  *Schnitzler v. United States*, 761 F.3d 33, 37 (D.C. Cir. 2014) (citations omitted).  However, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (citation omitted).

   Petitioner explains that his release from ICE custody and into ORR custody affords him different protections even after he turns eighteen.  Specifically, 8 U.S.C. 1232(c)(2)(B) requires DHS to consider placement in a less restrictive setting than adult detention once a minor in HHS custody reaches eighteen years of age.  (Doc. 4) at 3-4; (Doc. 14) at 8 (stating Petitioner "will retain UAC status … regardless once he turns 18").  In addition, if Petitioner is found to be a UAC, he is eligible to pursue his asylum claim before the U. S. Citizenship and Immigration Services instead of the Executive Office of Immigration Review, and pursue Special Immigrant Juvenile Status, which is a path to permanent residency.  *See* 8 U.S.C. §§ 1158(b)(3)(C) and 1101(a)(25)(J).  Therefore, because Petitioner will retain a concrete interest in the outcome of this case after he turns eighteen, the case is not moot.

For the reasons stated above, the Court concludes that it has jurisdiction to consider Petitioner's claim that ICE and the Immigration Judge did not comply with 8 U.S.C. § 1232(b)(4) and the agency's policies in determining whether Petitioner was a minor.  The Court further finds that exhaustion of administrative remedies for this claim would be futile, Petitioner's claim is a cognizable habeas claim, and the relief Petitioner seeks will not become moot when he turns eighteen.

IV.   *Preliminary Injunction*

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).  To obtain a preliminary injunction, Petitioner must establish: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).  "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (citation omitted).  In addition, courts disfavor preliminary injunctions that "exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232 (citation omitted).

A.   *Substantial Likelihood of Success on the Merits*

The Court finds Petitioner is likely to succeed on the merits of his claim that ICE and the Immigration Judge did not comply with 8 U.S.C. § 1232(b)(4) and the agencies' Policy Guidelines regarding the use of radiographs.  Section 1232(b)(4) requires HHS and DHS to

"develop procedures to make a prompt determination of the age of an alien," and that these

procedures "shall be used by [DHS] and [HHS] for children in their respective custody."

Accordingly, ORR and ICE developed policies regarding the use of imaging technology which

require a medical professional experienced in age assessment methods to perform the

examination, the individual's ethnic and genetic background be taken into account, the

"examining doctor must submit a written report indicating the probability percentage that the

individual is a minor or an adult."  (ORR Policy Guidelines, § 1.6); (ICE Policy Guidelines, §

3.1.2).  In addition, ORR's Policy Guidelines state: "If an individual's estimated probability of

being 18 or older is 75 percent or greater according to a medical age assessment, and this

evidence has been considered in conjunction with the totality of the evidence, ORR may refer the

individual to DHS."  (ORR Policy Guidelines, § 1.6).  Similarly, ICE's Policy Guidelines state:

"If the probability of an individual being 18 years old or older is 75 percent or greater, and the

totality of the evidence suggests the person is an adult, process the individual as an adult." (ICE

Policy Guidelines, § 3.1.2).

The bone density exam completed by Southwest XRay on April 21, 2020, states in its

entirety:

> The stated chronological age of this male patient is 4 days less than
> 20 years.  As per the standards of Greulich and Pyle, the skeletal
> age is at least 19 years (the oldest available standard in the
> reference manual).  The growth plates are nearly all fused, with the
> exception of the distal radial epiphysis, where there is minimal
> residual visibility of the epiphyseal line.  Of note, this can persist
> throughout much of the adult life.

(Doc. 1-5).  Both ICE and the Immigration Judge relied on these results in making their age

determinations.  *See* (Doc. 10-1) at 3; (Doc. 10-2) (audio recording of May 13, 2020, hearing

before the Immigration Judge).  However, the examination does not state whether it was

performed by a medical professional experienced in age assessment methods, whether Petitioner's ethnic and genetic background was considered, or the probability percentage that Petitioner is a minor or an adult.  Therefore, the Court finds Petitioner is likely to succeed on the merits of his claim that ICE and the Immigration Judge did not comply with 8 U.S.C. § 1232(b)(4) or with ORR and ICE Policy Guidelines.  *See also N.B.*, 2019 WL 4849175 (finding petitioner likely to succeed on merits of claim that ICE improperly found petitioner was an adult based on dental radiograph, petitioner's misrepresentations that he was an adult at certain points in his travels to avoid being detained, and speculation that petitioner's documents were unreliable); *B.I.C.*, 2016 WL 8672760 (finding petitioner likely to succeed on merits of claim that ICE improperly relied exclusively on dental x-rays in violation of 8 U.S.C. § 1232(b)(4) and ICE policy); *I.J.*, No. CV-19-01904-SMB (same); *L.B.*, CV-18-03435-JJT (same); *cf. C.T.M.*, 2020 WL 1249757 (finding petitioner not likely to succeed on merits because Immigration Judge relied on petitioner's father's statement on visa form that petitioner was older than eighteen, in addition to dental radiograph, in making age determination).[5]

　　B.　*Likely to Suffer Irreparable Harm*

　　If the Court does not grant injunctive relief and continue Petitioner's placement with ORR until his age determination is made in compliance with agency policy, Petitioner would be subject to detention with adults and to a removal order.  In addition, if Petitioner is found to be a minor, Petitioner would be able to seek asylum before the United States Citizenship and Immigration Services and pursue special Immigrant Juvenile Status, and, once he turns eighteen

---

[5] The Court acknowledges the remarkable similarities between the versions of events offered by Petitioner here and the Petitioner in *V.V. v. Orozco*, CV-20-560 KG/CG.  Nevertheless, because the Court does not have jurisdiction to review the factual determinations made by ICE or the Immigration Judge, or to reweigh the evidence, these factual similarities do not affect the Court's decision.

ICE must consider placement in the least restrictive setting available.  *See* 8 U.S.C. §§ 1158(b)(3)(C), 1101(a)(25)(J), and 1232(c)(2).  Because this relief would be unavailable to Petitioner if his age determination is not revisited, the Court concludes that Petitioner would suffer irreparable harm if the injunction does not issue.

C.    *Public Interest and Balance of Equities*

In considering the public interest and balance of equities, the Court is mindful that DHS has substantial discretion in the area of immigration law.  Nevertheless, Petitioner has identified a specific statutory provision where the agency's discretion has been constrained by Congress.  Accordingly, the Court concludes the public interest weighs in favor of Petitioner receiving an age determination that complies with Section 1232(b)(4) and agency policy guidelines.  *See, e.g., Ramirez*, 310 F.Supp.3d at 33 ("The public interest surely does not cut in favor of permitting an agency to fail to comply with a statutory mandate.").

D.   *Additional Considerations*

Finally, the Court considers whether the injunction mandates action, changes the status quo, or grants all the relief Petitioner seeks.  While issuing the injunction requires ORR to reconsider Petitioner's age determination, it does not necessarily change the status quo since Petitioner maintains he is a minor and seeks an injunction to preserve that status.  In addition, the Court is not granting all the relief Petitioner seeks as the Court is not reviewing the factual determinations made by ICE or the Immigration Judge or deeming that Petitioner is a UAC for purposes of his immigration proceedings.  In addition, the Tenth Circuit has explained that a "disfavored injunction" may still issue if the petitioner makes "a strong showing" that the likelihood of success on the merits and balance of harms "tilt in her favor."  *Mrs. Fields*

*Franchising, LLC*, 941 F.3d at 1232.  The Court concludes that Petitioner has made such a showing in this case.

V.      *Conclusion*

For the foregoing reasons, the Court grants Petitioner's Motion for a Preliminary Injunction in part and enjoins Respondents from applying the age determinations made by ICE and the Immigration Judge until ORR makes an age determination in accordance with 8 U.S.C. § 1232(b)(4) and ORR's Policy Guidelines.  The Court bases its decision on the evidence submitted by the parties and the arguments in the parties' briefing, and the Court concludes it does not have jurisdiction to reconsider the agency's factual determinations.  Therefore, the Court finds that an evidentiary hearing is unnecessary and oral argument would not assist the Court it in its ruling.  *See Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191, at *3 (10th Cir.1998) (explaining courts are not required to hold evidentiary hearing prior to granting or denying a preliminary injunction motion).

IT IS THEREFORE ORDERED that Petitioner's Motion for a Temporary Restraining Order, (Doc. 4), which the Court now construes as a Motion for a Preliminary Injunction, is granted in part as follows:

1.  Respondents are enjoined from applying the age determination made by ICE and the Immigration Judge until ORR makes an age determination in accordance with 8 U.S.C. § 1232(b)(4) and ORR's Policy Guidelines;

2.  Petitioner shall remain in ORR custody and his date of birth shall be considered to be July 3, 2002, until ORR completes an age determination; and

3.  ORR shall complete an age determination in compliance with 8 U.S.C. § 1232(b)(4) and its Policy Guidelines within fourteen days of the date of this Order.

All other relief requested in Petitioner's Motion for Preliminary Injunction is denied for lack of jurisdiction

IT IS FURTHER ORDERED that the parties shall notify the Court of the status of this case within thirty days of the date of this Order.

_____
UNITED STATES DISTRICT JUDGE